IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYLES J. HANNIGAN, | No. 4:21-CV-01784 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| STEPHEN SPAULDING, | |
| Respondent. | |

MEMORANDUM OPINION

JULY 20, 2022

Petitioner Myles J. Hannigan, an inmate confined at the Federal Prison Camp, Lewisburg at the time of filing, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He challenges the decision by the Federal Bureau of Prisons (BOP) denying his request for home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act.[1]  For the reasons that follow, the Court will deny Hannigan's Section 2241 petition.

I.   BACKGROUND

Hannigan is currently serving a 52-month sentence imposed by the United States District Court for the Eastern District of Pennsylvania for numerous federal tax offenses.[2]  His projected release date is October 22, 2022.[3]

---

[1] Pub. L. 116-136, 134 Stat. 281 (2020).
[2] *See United States v. Hannigan*, No. 2:19-CR-00373, Doc. 27 (E.D.P.A. Feb. 14, 2020).
[3] Doc. 12-1 at 7, 8, 9.

On December 7, 2020, Hannigan formally requested that he be placed on home confinement under the CARES Act through administrative remedy request number 1060225-F1.[4] Hannigan cited his age (49 at the time) and medical conditions, which included "diabetes, coronary artery disease, hypertension, obesity and a compromised immune system d[ue] to years of chronic alcohol abuse."[5] Approximately one week later, Respondent—Warden Stephen Spaulding—denied Hannigan's administrative remedy request, stating that Hannigan did "not meet the criteria for transfer to home confinement under the CARES Act, or for Compassionate Release."[6]

Hannigan appealed to the Northeast Regional Office, but that appeal was denied.[7] The Regional Director explained that Hannigan did "not meet the criteria for home confinement due to [his] recidivism level, [his] security level, and [his] percentage of time served," and that Warden Spaulding had "appropriately determined [Hannigan's] case did not warrant an exception review."[8]

Hannigan appealed to the final level of review with the BOP's General Counsel in May 2021.[9] In this final appeal, Hannigan specifically referenced updated BOP guidance expanding the criteria for home confinement.[10] On July 2,

---

[4]   Doc. 1-1 ¶ 26; Doc. 1-2 at 5.
[5]   Doc. 1-2 at 3-4.
[6]   Doc. 12-1 at 22.
[7]   Doc. 1-1 ¶¶ 29, 33; Doc. 1-2 at 8, 10.
[8]   Doc. 1-2 at 10.
[9]   Doc. 1-1 ¶ 35; Doc. 1-2 at 12.
[10]  *See* Doc. 1-2 at 12.

2021, that appeal was likewise denied.[11]  The BOP's General Counsel explained that, when Hannigan's initial request and first-level appeal were denied, he did not qualify for home confinement under the CARES Act and then-existing guidance and thus those denials were appropriate.[12]  General Counsel further explained that, in light of the updated guidance, all inmates with "Minimum and Low PATTERN scores [were] being automatically reviewed as of April 13, 2021" and that Hannigan—who had a "Low PATTERN score"—should follow up with his Unit Team for review or file a new administrative remedy request.[13]

    Hannigan attests that he did both.[14]  Dissatisfied with his Unit Team's response, he filed a new administrative remedy request (number 1095820-F1) on September 14, 2021 seeking home confinement under the CARES Act due to his medical conditions and the risks presented by the COVID-19 virus.[15]  Warden Spaulding denied this request on October 6, 2021.[16]  In his denial, Warden Spaulding noted that the home-confinement area to which Hannigan would be releasing had approximately "114 active" COVID-19 cases, and that FPC Lewisburg had not had a positive case since February 2021.[17]

---

[11]  See id. at 14.
[12]  Id.
[13]  Id.
[14]  Doc. 1-1 ¶ 37.
[15]  Doc. 1-2 at 15.
[16]  See id. at 16.
[17]  Id.

Hannigan does not state whether he appealed this denial to the Regional Office, but it does not appear that he did because he filed the instant Section 2241 petition approximately one week after the denial of his second administrative remedy request.[18]  Hannigan's petition is fully briefed and ripe for disposition.

## II.  DISCUSSION

Hannigan's primary argument is that his equal protection rights under the Fifth Amendment[19] were violated when he was refused home confinement but other similarly situated prisoners were granted this relief.[20]  He states that he is asserting a "class of one" claim, alleging that he was treated differently than other similarly situated inmates.[21]  No matter how Hannigan couches his claims, the Court cannot grant the relief he seeks.

### A.  Administrative Exhaustion

Although there is no explicit statutory exhaustion requirement for Section 2241 habeas petitions, the United States Court of Appeals for the Third Circuit has

---

[18]  *See* Doc. 1 at 9.
[19]  Hannigan cites the Fourteenth Amendment, but because his equal protection claim is against the federal government, it arises under the Fifth Amendment. The Fifth Amendment, unlike the Fourteenth, does not contain an express Equal Protection Clause, but the Supreme Court of the United States has "construed the Fifth Amendment to contain an equal protection guarantee." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 316-17 (3d Cir. 2001) (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991)); *see also Davis v. Passman*, 442 U.S. 228, 234-35 (1979). Fifth Amendment equal protection claims are examined coextensively with Fourteenth Amendment equal protection jurisprudence. *Abdul-Akbar*, 239 F.3d at 317.
[20]  Doc. 1 at 6.
[21]  *Id.*

4

consistently held that exhaustion applies to such claims.[22]  Exhaustion allows the relevant agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy."[23]  The BOP has a specific internal system through which federal prisoners can request review of any aspect of their imprisonment.[24]  That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel.[25]

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review.[26]  Only in rare circumstances is exhaustion of administrative remedies not required.  For example, exhaustion is unnecessary if the issue presented is one that involves only statutory construction.[27]  Exhaustion is likewise excused when it would be futile.[28]

From the record, it is clear that Hannigan exhausted his first administrative remedy request—number 1060225-F1.  He appealed it to the final level of review

---

[22] *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (citing *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).
[23] *Moscato*, 98 F.3d at 761-62 (citations omitted).
[24] *See generally* 28 C.F.R. §§ 542.10-.19.
[25] *See id.* §§ 542.13-.15.
[26] *See Moscato*, 98 F.3d at 761.
[27] *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)).
[28] *Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982); *see Cottillion v. United Refining Co.*, 781 F.3d 47, 54 (3d Cir. 2015) (affirming, in ERISA context, futility exception to exhaustion requirement).

with the BOP's General Counsel. That administrative remedy, however, was denied because Hannigan did not meet then-existing qualifications for early release to home confinement under the CARES Act and relevant agency guidance. As the Regional Director noted, Hannigan's recidivism level, security level, and percentage of time served all precluded him from qualifying for early release to home confinement. Hannigan does not contend that these assessments were inaccurate or incorrect.

Following the modification in BOP guidance, Hannigan filed a new administrative remedy request, number 1095820-F1. That request was denied by Warden Spaulding on October 6, 2021, approximately one week before Hannigan filed his Section 2241 petition. But Hannigan did not exhaust his administrative remedies as to request number 1095820-F1 and the claims therein based on the updated agency guidance. Nor has he proffered any reason why exhaustion should be excused. Accordingly, any habeas review in this Court is cabined to consideration of Hannigan's claims in administrative remedy request number 1060225-F1, as those are the only claims that he properly exhausted.[29]

### B. Home-Confinement Decision

Hannigan's petition for habeas relief faces an even more formidable hurdle than administration exhaustion: under the relevant CARES Act provisions,

---

[29] *See Moscato*, 98 F.3d at 761.

"whether to transfer an inmate to home confinement is a decision within the *exclusive* discretion of the BOP."[30]  In other words, as the Third Circuit has recently explained, "the BOP has exclusive control over an inmate's placement in home confinement."[31]  Thus, "assuming that the absence of authority to *order* home confinement does not prohibit a court from *reviewing* in a § 2241 petition the BOP's denial of home confinement,"[32] this Court's review of such discretionary action is limited to determining "whether the BOP abused its discretion."[33]

     Hannigan's request for home confinement was denied, based on then-existing agency guidance, because he failed to meet at least three necessary metrics: recidivism level, security level, and percentage of time served.  Hannigan does not dispute these findings (although he asserts that, following exhaustion of his initial administrative remedy, some of those circumstances—like percentage of time served—had changed).  In no way can the Court find that the BOP's denial of

---

[30] *Washington v. Warden Canaan USP*, 858 F. App'x 35, 36 (3d Cir. 2021) (nonprecedential) (emphasis added) (citing 18 U.S.C. § 3624(c)(2); CARES Act, Pub. L. 116-136, Mar. 27, 2020, 134 Stat. 281, Div. B, Title II, § 12003(b)(2) ("[T]he Director of the [BOP] may lengthen the maximum amount of time for which *the Director* is authorized to place a prisoner in home confinement under [§ 3624(c)(2)].")); *see also United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (nonprecedential) (noting that "the Bureau of Prisons has the sole authority to place a prisoner in home confinement"); *Jackson v. White*, No. 3:20-CV-0919, 2020 WL 3036075, at *9 (M.D. Pa. June 5, 2020) (collecting cases holding same).
[31] *Collins v. Warden Canaan PFC*, No. 21-2878, 2022 WL 2752536, at *2 (3d Cir. July 14, 2022) (nonprecedential).
[32] *Id.*
[33] *Vasquez*, 684 F.3d at 434 (citing *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir.1990)); *Collins*, 2022 WL 2752536, at *2 & n.3

home confinement under these facts was an abuse of discretion.

### C. Equal Protection Claim

Hannigan also contends that the BOP violated his equal protection rights under the Fifth Amendment. He states that he is asserting a "class of one" equal protection claim, maintaining that several similarly situated inmates received home confinement and he did not. Respondent does not address this claim at all. In any event, it does not warrant relief.

As previously noted, the relief Hannigan seeks is "to be placed on the approved list for the Cares Act and be transferred by the BOP to home confinement for the remainder of [his] sentence."[34] The Court, however, cannot grant such relief because, as explained above, placement on home confinement remains exclusively within the purview of the BOP.

Furthermore, Hannigan has not established that his comparators were similarly situated to him when he was denied, and they were granted, home confinement.[35] That is, Hannigan has not shown that the other three inmates he references shared his recidivism level, security level, and percentage of time served when they were granted home confinement and Hannigan's request was denied.[36]

---

[34] Doc. 1 at 8.
[35] *See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) (explaining that plaintiff asserting an equal protection claim must demonstrate he "received different treatment from that received by other individuals similarly situated").
[36] As to inmate Mitchell Bleicher, Hannigan in fact admits that Bleicher had completed at least 50 percent of his sentence at the time of his release to home confinement under the CARES Act. *See* Doc. 1-1 ¶ 32.

Although Hannigan avers that he had more serious medical problems than his comparators, the BOP did not base its home-confinement decision on Hannigan's medical conditions. Hannigan's equal protection claim, therefore, falls short.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Hannigan's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge